## EDWARDS v. BODKIN.

(District Court, S. D. California, S. D.   April 16, 1917.)

No. C-55.

1. PUBLIC LANDS ⊜108—DECISIONS OF LAND DEPARTMENT—REVIEW.

The District Court cannot sit as a court of appeal upon the conduct or conclusions of the Department of the Interior respecting the disposal of public lands, but is limited to the correction of errors such as is peculiarly the province of a court of equity, where fraud has supervened, or to correct a manifest misconstruction of the law by the departmental officers.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 304, 306.]

2. PUBLIC LANDS ⊜108—DECISIONS OF LAND DEPARTMENT—COLLATERAL ATTACK.

Within the domain of fact, in the absence of extrinsic fraud, the conclusions of the Department of the Interior respecting the disposal of public lands are not susceptible to collateral attack.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 304, 306.]

3. PUBLIC LANDS ⊜109—DECISIONS OF LAND DEPARTMENT—FRAUD—PLEADINGS.

Where fraud and misrepresentation are relied upon as grounds of interference by the court with decisions of the Department of the Interior respecting the disposal of public lands, they should be stated with such fullness and particularity as to show that they must necessarily have affected the action of the officers in the department, and mere general allegations of fraud and misrepresentations will not suffice.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 307.]

4. PUBLIC LANDS ⊜103(3)—CONTESTS—PREFERENTIAL RIGHT.

Under the Act May 14, 1880, c. 89, 21 Stat. 140 (Comp. St. 1916, §§ 4536–4538), providing that where any person has contested and procured the cancellation of any homestead entry he shall be allowed 30 days to enter the lands, where the Department of the Interior entertained a contest while the land involved was withdrawn from entry under Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388, it properly permitted the successful contestant to enter the lands within 30 days after the restoration of such lands to entry.

Suit by William B. Edwards against Patrick H. Bodkin.   On motion to dismiss the complaint.   Motion granted.

By amended bill of complaint in equity plaintiff alleges, among other things, that on July 17, 1902, the Secretary of the Interior, under the "second form" of withdrawal under the "Reclamation Act" of June 17, 1902, withdrew a certain quarter section lying along the Colorado river in California.   On the 1st of December following plaintiff made a homestead entry of said land. Thereafter, in September, 1903, the Secretary of the Interior made a "first form" withdrawal of the quarter section above referred to.

In 1905 the Department of the Interior promulgated certain regulations respecting withdrawals under the Reclamation Act (33 Land Dec. 607), providing for the entertaining of contests as to lands withdrawn pursuant to either form of withdrawal under the Reclamation Act, and also providing that the preferred right of a successful contestant under the statute of 1880 (21 Stat. 140) would be held to attach at any time "within 30 days from notice that the lands involved have been released from such withdrawal and made subject to entry."

Thereafter, under the provisions of these regulations, defendant contested the entry of plaintiff in May, 1908. The decision of the local land officers was adverse to plaintiff, and on appeal was sustained by the department, and the entry of plaintiff was canceled April 19, 1909. On May 18, 1910, pursuant to order of restoration of January 10, 1910, the land was released from every form of reclamation withdrawal and restored to entry.

Thereafter, on May 18, 1910, plaintiff and defendant filed applications for the entry of such land. Because of matters not necessary to be detailed here, decision on such applications was withheld until June, 1912, at which time plaintiff's application was rejected and defendant's application, because of the preferential right inuring to him in virtue of his successful contest, was accepted. Upon appeal this was sustained. A rather succinct statement of the facts in the controversy will be found in Edwards v. Bodkin, 42 Land Dec. 172, 174.

Plaintiff also alleges the initiation and pendency of certain ejectment proceedings in the superior court of Riverside county, the county in which the land was situate, resulting adversely to him, in consequence of which he was ejected from the land.

It is also alleged, beginning with paragraph 51 of the complaint that defendant, claiming other land by homestead, relinquished his homestead entry on the land in question in 1914, and thereupon offered scrip locations on the same land and asked for acceptance of the same. Plaintiff then alleges "that, exercising his lawful privilege of protest, plaintiff duly filed with the register and receiver his written protest under oath against the allowance of said scrip locations, on or about April 1, 1914." Subsequently the scrip locations of the defendant were accepted by the department, and patents of the United States in response thereto were issued. Wherefore plaintiff asks that the defendant be declared a trustee of said property, holding said patents for his use and benefit, etc.

Wm. B. Edwards, of Redlands, Cal., in pro. per.
Duke Stone, of Los Angeles, Cal., for defendant.

BLEDSOE, District Judge (after stating the facts as above). In this case, plaintiff, who appears in propria persona, has imposed considerable labor upon the court because of the undue prolixity with which he has clothed both his complaint and his argument in support thereof. However, the court has endeavored, as best it might, to give all of the matters submitted to it the very careful consideration which their importance, to the parties at least, demanded.

Without going into a lengthy statement either of facts or conclusions, because of pressure of other duties, it will suffice to say that plaintiff presents, as I see it, two reasons why defendant should be declared to be a trustee for him of the land heretofore patented by the United States: First, that the Department of the Interior, without right and contrary to law, extended the so-called preference right of defendant, earned after successful termination of contest, beyond the 30-day period provided by the statute (21 Stat. at L. 140), so as to entitle defendant to have and take advantage of such preferential right after a restoration from withdrawal of the lands affected; and secondly, that in spite of the protest of plaintiff, upon relinquishment and location by scrip of the lands in controversy, the Land Department fraudulently and without right overruled plaintiff's claims and allowed the aforesaid scrip location of the defendant.

[1-3] It is hornbook law that in a case of this sort the function of the court is not to sit in judgment as a court of appeal upon the

conduct or conclusions of the Department of the Interior respecting a disposal of public lands. Its jurisdiction is limited to a correction of errors such as is peculiarly the province of a court of equity where fraud has supervened, or to correct what may be shown to the court to be a manifest misconstruction of the law by the officers of the department. Within the domain of fact, in the absence of extrinsic fraud, the conclusions of the department are not susceptible to collateral attack. So, also, "where fraud and misrepresentations are relied upon as grounds of interference by the court, they should be stated with such fullness and particularity as to show that they must necessarily have affected the action of the officers of the department. Mere general allegations of fraud and misrepresentations will not suffice." Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800.

The allegations of plaintiff with respect to fraud perpetrated upon him, and the alleged unlawful overruling of his protest of the allowance of the scrip location, are not made with such particularity of detail as to show either that any fraud was actually committed or that any mistake of law in the overruling of plaintiff's protest was indulged in. Non constat no ground may have been set up in plaintiff's protest against the allowance of the scrip location sufficient to authorize or justify the department in sustaining it. Assuredly no particulars of fraudulent conduct are alleged, and nothing but the most general and inconclusive assertions with respect to fraud are indulged in.

[4] The main question in the case centers around the right of the Department of the Interior to allow the preferential right inuring to the successful contestant of an entry upon public lands to attach and be taken advantage of after the lands have been restored to entry subsequent to a "first form" withdrawal under the act of June 17, 1902 (32 Stat. at L. 388). The department in several apparently well-considered decisions has held that such right obtains (Fairchild v. Eby, 37 Land Dec. 362; Beach v. Hanson, 40 Land Dec. 607; Wright v. Francis, 36 Land Dec. 499; Edwards v. Bodkin, 42 Land Dec. 172), and this court is not prepared to hold that there is such a manifest disregard of the law exhibited by those holdings as to warrant interference in plaintiff's behalf.

It must be conceded that the statute of 1880 gave to a successful contestant a substantial statutory right—the right to enter the land which was the subject of the successful contest. In order that evasions of the law might be prevented and frauds upon the government avoided, it was both necessary and proper that this statutory right and privilege should be given due recognition, and that it should be accorded a liberal construction in the administration of the land laws. It was intended to act as a preventive of frauds upon the government, and intended to reward those who were diligent in exhibiting the facts of such fraud to the government. It may have been that, with respect at least to "first form" withdrawals, the Department of the Interior should never have permitted contests. However, at the time of the contest in question, there is no doubt but that under the regulations governing the conduct of that department such contests were allowed. With the wisdom or policy of permitting such contests, of course,

this court has no concern. In the event of the successful termination of such contest, under the statute of 1880 the contestant, as above referred to, was entitled to a preferential right of entry. This right must needs have been made use of by him within 30 days after notice of the successful termination of his contest. A withdrawal of the lands involved in a contest under the "first form" of the reclamation act, however, served to exclude such land so withdrawn from entry. In contemplation of law it had then, temporarily or permanently, been taken over for public and governmental purposes. In the event of its being taken over permanently, that is, in the event of the completion of the reclamation project as originally conceived and the actual use of the land for the public purpose contemplated in the original withdrawal, the contestant would, of course, have lost his preferential or any other right of entry; but it must be assumed that he instituted his contest with such possibility in mind. In the event, however, that it should be discovered, as it was in this case, that the withdrawal was unnecessary —that the original intention to use the withdrawn lands could not for some reason be consummated—and the land should thereafter be restored to the public domain, subsequent entry, as between the contestant who had a preferential right and the entryman whose claims to the land had, after due investigation, been denied, should be given to the one who had done everything in his power, presumably, to comply with the laws of the United States, rather than to one who, presumably, under the findings and judgment of the Interior Department, had failed to comply with such laws.

In other words, having initiated a contest and having proven to the satisfaction of those given jurisdiction to hear it that his contest was well founded, the contestant, under the statute, had a right to enter the land as for himself. This right he must exercise within 30 days after notice of a decision in his favor. This right, however, though a substantial one, was denied to him because of the withdrawal of the land by superior authority, the government of the United States. Upon the land reverting to the public domain and upon its thereafter becoming subject to entry, there would seem to be good reason for holding that the preferential right theretofore awarded by statute to the contestant should then inure to him. At all times after a determination of his contest in his favor, presumably, he was ready, willing, and anxious to make his entry. He was prevented from so doing by the action of the government. There can be no impropriety, then, in according to him a substantial recognition of this right as soon as it had been definitely determined that the government no longer had claims upon the land. In my judgment, the action of the department in holding that the right accrued as of the date of restoration of the land to the public domain was a correct application of the law in the premises.

Many facts are alleged by plaintiff tending to show that he was unjustly "contested" out of his land. Obviously, with these matters, this court has nothing to do. A tribunal has been set up by the government, competent and efficient, to determine these controversies. This court must, as it does, assume that the determinations of such tribunal

are proper and supported by sufficiently persuasive and controlling facts.

The motion to dismiss on the ground that the complaint does not state a cause of action is granted.